Jennifer M. Oliver (SBN 311196)
jennifer.oliver@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: 619 239 8700
Fax: 619 702 3898
*Attorney for Defendant Hwareh.com, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shahnaz Zarif, individually and on behalf of others similarly situated,<br><br>               Plaintiff,<br><br>    vs.<br><br>Hwareh.com, Inc.,<br><br>              Defendant. | Case No.: 3:23-cv-0565 (BAS) (DEB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HWAREH.COM, INC.'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>*No oral argument unless ordered by the Court*<br><br>Date: July 22, 2024<br>Crtrm: 12B<br>Judge: Hon. C. Bashant |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..........................................................................................1

II.    BACKGROUND ...........................................................................................3

III.   LEGAL STANDARD ...................................................................................4

    A.    Failure to state a claim under Rule 12(b)(6). ....................................4

    B.    Lack of personal jurisdiction under Rule 12(b)(1). ...........................4

IV.    ARGUMENT.................................................................................................6

    A.    This Court lacks personal jurisdiction over HEWA. ..........................6

    B.    Plaintiff and Class Members consented to the disclosures at issue. .....9

    C.    Website tracking software is not wiretapping software......................11

    D.    Plaintiff has not alleged the requisite intent for a federal
           wiretapping, CIPA, or CDAFA claim..............................................12

    E.    Plaintiff has failed to state a claim under the Federal Wiretap Act....13

          1.    Plaintiff fails to allege all parties' lack of consent. ................13

          2.    Plaintiff does not allege interception while in transit.............14

    F.    Plaintiff cannot state a claim under CIPA § 631................................15

          1.    The Pixel is an "extension" of HEWA's website. ...................16

          2.    § 631 does not apply to internet communications. ..................17

          3.    Plaintiff does not allege interception of the "contents" of a
              "communication" "while in transit." .......................................17

    G.    Plaintiff fails to state a claim under CIPA § 638.51. .........................19

    H.    Plaintiff fails to state a claim under CDAFA......................................20

    I.     CIPA and CDAFA do not apply to extraterritorial conduct. .............22

    J.    Plaintiff fails to state a claim under CMIA.......................................23

          1.    Plaintiff fails to allege that she was a "patient.".....................24

          2.    Plaintiff does not allege negligent treatment of medical
              information as defined by the CMIA.......................................24

3. Plaintiff fails to allege that anyone at Meta received or viewed medical information. ....................................................25

K. Plaintiff cannot state a claim under the CCPA. .................................26

1. HEWA is not a "business" subject to the CCPA.....................27

2. Plaintiff has not alleged a cognizable violation.......................28

V. CONCLUSION ...........................................................30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................3, 4

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) ...............................................4

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ...............................................6

*Barbour v. John Muir Health*,
   No. C22-01692, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) ...................26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2006)................................................4, 19, 24, 25

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008)...............................................5, 6

*Brackett v. Am. Airlines Grp. Inc.*,
   No. 21-cv-02681-HSG, 2022 WL 282529 (N.D. Cal. Jan 31, 2022)................23

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020)................................................15

*Byars v. Hot Topic, Inc.*,
   No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ................................................16

*Casillas v. Transtion Optical Inc.*,
   No. 23STCV30742 (Cal. Super. Ct. Apr. 23, 2024) .......................20

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018)..............................................15

*Cottle v. Plaid Inc.*,
   536 F.Supp.3d 461 (N.D. Cal. 2021)................................................22

*Custom Packaging Supply, Inc. v. Phillips*,
   Case No. 2:15-CV-04584-ODW-AGR, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015)................................................20

iii

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)............................................................................5

*Davis v. HSBC Bank Nev., N.A.,*
    691 F.3d 1152 (9th Cir. 2012) ........................................................10

*Doe v. Meta Platforms, Inc.*
    No. 22-cv-03580-WHO (N.D. Cal. Sep. 7, 2023)...........................22

*Eisenhower Med. Ctr. v. Super. Ct.,*
    226 Cal. App. 4th 430 (2014)..........................................................24

*In re Facebook Internet Tracking Litig.,*
    5:12-md-02314-EJD (N.D. Cal.) .....................................................14

*Goldstein v. Costco Wholesale Corp.,*
    No. 21-CV-80601-RAR, 2021 WL 4134774 (S.D. Fla. Sept. 9, 2021).......12, 17

*Goldstein v. Luxottica of Am., Inc.,*
    No. 21-80546-CIV-CANNON/REINHART, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ........................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)..........................................................................5

*Graham v. Noom, Inc.,*
    533 F. Supp. 823 (N.D. Cal. 2021)............................................16, 19

*Greenley v. Kochava, Inc.,*
    No. 22-cv-01327-BAS-AHG, 2023 WL 2833466 (S.D. Cal. Jul. 27, 2023) ..............................................................22

*Hammerling v. Google LLC,*
    No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ...........23

*Helicopteros Nacionales de Colombia S.A. v. Hall,*
    466 U.S. 408 (1984)..........................................................................5

*Herbal Brands Inc. v. Photoplaza, Inc.,*
    72 F.4th 1085 (9th Cir. 2023) ..........................................................8

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)..........................................................................5

iv

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012).............................................................17

*Jacome v. Spirit Airlines Inc.*,
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17,
2021) ..............................................................................................11, 12, 17

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .............................................................................14

*Lee v. Netgain Tech.*,
LLC, No. 21-cv-1144-LL (MSB), 2022 WL 993552 (S.D. Cal. Apr.
1, 2022) ...............................................................................................................6

*Leonard v. USA Petroleum Corp.*
829 F. Supp. 882 (S.D. Tex. 1993).....................................................................8

*M Seven Sys. Ltd. v. Leap Wireless Int'l Inc.*,
2013 WL 12072526 (S.D. Cal. June 26, 2013) ................................................22

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .............................................................................5

*Massie*, 2021 WL 2142728 ........................................................................................6

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..................................................17, 18, 19

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .............................................................................5

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. 2023).....................................................9, 10, 11

*Moledina v. Marriott Int'l, Inc.*,
No. 2:22-cv-03059-SPGJPR, 2022 WL 16630276 (C.D. Cal. Oct. 17,
2022) ....................................................................................................................9

*Montantes v. Inventure Foods*,
No. CV-14-1128-MWF, 2014 WL 3305578 (C.D. Cal. July 2, 2014) ..............18

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
No. 12-CV-01685-BAS (JLB), 2016 WL 4886933 (S.D. Cal. Sept.
15, 2016) .............................................................................................................9

v

*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ............................................21, 22

*Nutrishare, Inc. v. BioRX, LLC*,
    2008 WL 3842946 (C.D. Cal. 2008) ........................................................8

*Oakley, Inc. v. Donofrio*,
    2013 WL 12126017 (C.D. Cal. June 14, 2013)......................................8

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ................................................................5

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ................................................................4

*Regents of Univ. Cal. v. Super. Ct.*,
    220 Cal. App. 4th 549 (2013) ..............................................................26

*Rodriguez v. Google LLC*,
    No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ................19

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ..................................................................19

*Rosenow v. Facebook, Inc.*,
    No. 19-CV-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ........................................................................................15

*Schwarzenegger v. Fred Martin Co.*,
    374 F.3d 797 (9th Cir. 2004)........................................................5, 6, 7

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017).........................................11, 25

*Smith v. Facebook, Inc.*,
    745 F. App'x 9 (9th Cir. 208) ..............................................................18

*Sutter Health v. Super. Ct.*,
    227 Cal. App. 4th 1546 (2014) ............................................................26

*Swiggum v. EAN Servs.*,
    LLC, No. 8:21-CV-493 TPB-CPT, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) ............................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................10, 11

*United States v. Van Poyck*,
    77 F.3d 285 (9th Cir. 1996) ...............................................................9

*In re Vizio, Inc. Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017)............................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................6

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018)............................................22

*Williams v. WhatIf Holdings. LLC et al*,
    No C 22-03780 WHA (N.D. Cal. Feb. 13, 2023)..............................16

*Wilson v. Rater8, LLC*,
    No. 20-cv-1515-DMS, LL, 2021 WL 4865930, at *1, *5 (S.D. Cal.
    Oct. 18, 2021) ....................................................................................25

*In re Zynga Privacy Litig.*,
    750 F. 3d 1098 (9th Cir. 2014) .........................................................18

**Statutes**

18 U.S.C. § 2511 (d) .............................................................................9, 14

28 U.S.C. § 1391(b) (2) ..............................................................................9

Cal. Civ. Code § 56.05 (j)..........................................................................24

Cal. Civ. Code § 56.101 .......................................................................23, 26

Cal. Civ. Code § 1798.81.5 (d) (1) (A)...............................................29, 30

Cal. Civ. Code § 1798.81.5 (d) (2) ..........................................................29

Cal. Civ. Code § 1798.81.5 (e) (1) ...........................................................28

Cal. Civ. Code §§ 1798.100 *et seq*. ........................................................26

Cal. Civ. Code § 1798.140 (i) ...................................................................27

Cal. Civ. Code § 1798.140 (d) ..................................................................27

vii

Cal. Civ. Code § 1798.150.................................................................27

Cal. Civ. Code § 1798.150 (a) ....................................................29, 30

Cal. Pen. Code § 502 ..................................................................2, 21

Cal. Pen. Code § 502(e)(1) .................................................................22

Cal. Pen. Code § 631 ................................................13, 15, 17, 19

Cal. Pen. Code § 631(a) ...............................................15, 17, 18

Cal. Pen. Code § 638.50 (b)................................................................19

Cal. Pen. Code § 638.51 .............................................................2, 19, 20

Cal. Pen. Code § 638.51 (5).................................................................9

## Other Authorities

HEWA Annual Report for the year ended December 31, 2022, at 38,
  available at https://www.otcmarkets.com/stock/HEWA/overview
  (indicating gross revenues of $18 million dollars for 2022) ..............28

Office of Attorney General Website, available at
  https://oag.ca.gov/privacy/ccpa#:~:text=For%20all%20other%20viol
  ations%20of,not%20represent%20individual%20California%20consu
  mers..................................................................................28

U.S. Dept. of Justice, Criminal Resource Manual, 1050. Scope of 18
  U.S.C § 2511 Prohibitions, available at
  https://www.justice.gov/archives/jm/criminal-resource-manual-1050-
  scope-18-usc-2511-prohibitions (accessed Mar. 29, 2023)................12

# I.    **INTRODUCTION**

This Court has twice held that it lacks personal jurisdiction over Defendant Hwareh.com ("HEWA" or "Defendant"), who has never purposefully availed or directed itself to California. In each instance Plaintiff Shanaz Zarif ("Plaintiff") was afforded the opportunity to amend. ECF 17; ECF 24. HEWA now seeks to dismiss her Third Amended Complaint ("TAC").

A cursory review of the redlined TAC (*see, e.g.,* ECF 25 at 89) quickly reveals that Plaintiff cannot remedy the dispositive jurisdictional deficiencies in her allegations, and this Court should dismiss this case for a third and final time. Plaintiff's effort to overcome her previous failures hinges on a handful of thin allegations: (a) a fourteen year old Twitter post in which Defendant stated that it was licensed to ship its products to California, (b) a twelve year old Twitter post in which Defendant referred to an article about medical marijuana shops in California; (c) another twelve year old Twitter post in which Defendant referred to an article on California's government health care plan; (d) an allegation that Defendant's products are available on Amazon; (e) an allegation that Defendant is registered to collect California sales tax, (f) a series of Facebook posts from 2009 - 2011; (g) an allegation that one product Defendant sells contains a California Proposition 65 warning; (h) a 2009 Twitter post stating Defendant is licensed in California; and (i) an allegation that Defendant is registered with the California Secretary of State. TAC ¶ 41.

These new jurisdictional allegations are somehow even more attenuated than the previous round, and this case should once again be dismissed on that basis alone.[1] But even if this Court did have jurisdiction over HEWA, it should dismiss all of

---

[1] For example that (a) that HEWA purposefully availed itself of the forum simply because it has sold products to California residents,[1] (TAC ¶ 37); (b) that HEWA announced an intention to provide prescriptions to California medical practice MedLion more than 10 years ago, (TAC ¶ 29); (c) that HEWA uses a California-based company to host its website, (TAC ¶¶ 31-32); and (d) that a California resident was nominated as a HEWA board member in 2013, (TAC ¶ 34).

Plaintiff's claims for the following reasons:

*First,* Plaintiff argues that HEWA violated the Federal Wiretap Act, TAC ¶ 236, but the Federal Wiretap Act requires the consent of only one party, and clearly HEWA consented to its own actions.

*Second,* Plaintiff alleges HEWA violated the California Invasion of Privacy Act ("CIPA") § 631(a),[2] by "aid[ing] and abet[ing] the interception of components of Plaintiffs' and Class Members' private electronic communications and transmissions by a third party, Facebook and the other spyware companies, when [those consumers] accessed Defendants' website from within the State of California." TAC ¶ 241. This too is an incognizable legal theory; Plaintiff has neither alleged the requisite interception "while in transit" via wire, line, cable or instrument, nor that any person attempted to learn the "contents" of a communication.

*Third,* Plaintiff alleges that Defendant's use of the Meta Pixel violates the California Consumer Data Access and Fraud Act ("CDAFA") (Cal. Pen. Code § 502) and CIPA § 638.51, which governs the use of pen registers and trap and trace devices. But CDAFA is an anti-hacking statute that requires real out-of-pocket damages associated with the "hack." Meta Pixel is not a "pen register" or "trap and trace" device as those terms are defined, and even if it were, HEWA is permitted to use such devices for the secure operation of its own website. Cal. Pen. Code § 638.51.

*Fourth,* Plaintiff alleges that by utilizing the Meta Pixel on its public website, HEWA violated the California Medical Information Act ("CMIA") TAC ¶¶ 269-282. But aside from rote recitation of the statute, *id.*, Plaintiff fails to allege facts to support any of the required elements of this claim. She does not allege that she was a patient of HEWA, that any medical information was actually transmitted to or viewed by a third party or otherwise negligently disposed of or handled, or that the information at issue was ever in the possession of or derived from HEWA.

---

[2] Plaintiff also makes a passing reference to violation of CIPA § 632 in the TAC but does not allege a claim under that section. TAC ¶ 77.

1    And *fifth,* Plaintiff alleges that HEWA's use of the Meta Pixel violates the

2  California Consumer Privacy Act of 2018 ("CCPA"). But Plaintiff failed to provide

3  the required 30-day cure letter, allege facts sufficient to show that HEWA is subject

4  to the CCPA, or allege the requisite "unauthorized access and exfiltration, theft, or

5  disclosure" of the limited enumerated categories of personal information required.[3]

6    When the TAC's red herrings are set aside, all that remains are "[t]hreadbare

7  recitals of the elements of a cause of action[] supported by mere conclusory

8  statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). The Court should reject

9  these dubious legal theories and dismiss the TAC in its entirety and with prejudice.

10  **II.   BACKGROUND**

11    HEWA, a Delaware corporation with its headquarters and principal place of

12  business in Kentucky,[4] is an online pharmacy that sells directly to individual

13  consumers who purchase prescription medications and over-the-counter products. *See*

14  Declaration of Daniel Seliga attached hereto, ("Seliga Decl.") ¶ 1. The majority of

15  HEWA's employees, its servers, and its customer support call center and distribution

16  center are located in Florence, Kentucky. *Id.* at ¶¶ 3-4.

17    The gravamen of Plaintiff's TAC remains the same as the first three iterations:

18  by utilizing the widely deployed Meta Pixel tool, a free product from Meta (a/k/a

19

---

20  [3] Perhaps recognizing these fatal shortcomings, Plaintiff resorts to incendiary yet

21  exceedingly vague references to "SDKs" and "spyware," listing numerous pieces of

    code, and summarily implying that these pieces of code are *also* third party

22  wiretappers. But Plaintiff does nothing to explain what is supposedly shared or with

23  whom, or even allege that these pieces of code are, or ever were, actually active on

    the site. The lengthy section of the TAC entitled "HIPAA Allegations" (TAC ¶ 192 *et*

24  *seq*) is similarly irrelevant. As Plaintiff acknowledges, there is no private right of

25  action for violation of HIPAA, and Plaintiff does not and cannot plausibly allege

    HEWA is even subject to that law. These allegations only serve to confuse and

26  prejudice.

27  [4] Although this error has been raised in HEWA's two previous motions, Paragraph 19

28  of the TAC *still* erroneously alleges HEWA is based in St. Louis, Missouri.

    Paragraph 26 correctly alleges that HEWA is based in Florence, Kentucky.

Facebook) that allows website owners to optimize delivery of digital ads to
customers, HEWA aids Facebook in "wiretapping" activity taking place on its own
website and should therefore be held liable for thousands of dollars in statutory
damages to each website visitor whose communications were purportedly
"intercepted."

## III.   <u>LEGAL STANDARD</u>

### A.      Failure to state a claim under Rule 12(b)(6).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failure
to state a claim upon which relief can be granted based on a lack of a cognizable legal
theory or on the absence of facts that would support a valid theory. *Balistreri v.
Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must state
"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2006). A claim has "facial plausibility" if the plaintiff
pleads facts that "allow[] the court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Federal courts follow a two-pronged approach when deciding a motion to
dismiss. First, "[t]hreadbare recitals of the elements of a cause of action, supported by
mere conclusory statements, do not suffice." *Id*. Courts need not "accept as true a
legal conclusion couched as a factual allegation." *Id.* at 678–80 (citation omitted).
And second, although they accept well-pleaded factual allegations as true, courts
must also "determine whether they plausibly give rise to an entitlement to relief." *Id.*
at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct" there is no plausible claim for relief. *Id.*

### B.      Lack of personal jurisdiction under Rule 12(b)(1).

"[P]ersonal jurisdiction over a defendant is proper if it is permitted by a long-
arm statute and if the exercise of that jurisdiction does not violate federal due
process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).
"Where… no federal statute authorizes personal jurisdiction, the district court applies

4

the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218, 1223 (9th Cir. 2011). The Fourteenth Amendment's Due Process
Clause permits courts to exercise personal jurisdiction over any defendant who has
sufficient "minimum contacts" with the forum such that the "maintenance of the suit
does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.
v. Washington*, 326 U.S. 310, 316 (1945).

There are two recognized bases for exercising personal jurisdiction over a non-
resident defendant: (1) "general jurisdiction," which arises where defendant's
activities in the forum state are sufficiently "substantial" or "continuous and
systematic" to justify the exercise of jurisdiction over him in all matters; and
(2) "specific jurisdiction," which arises when a defendant's contacts with the forum
give rise to the claim in question. *Helicopteros Nacionales de Colombia S.A. v. Hall*,
466 U.S. 408, 414–16 (1984).

The plaintiff bears the burden of establishing personal jurisdiction and "must
make a prima facie showing of jurisdictional facts to withstand the motion to
dismiss." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014);
*Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "[A] finding of general
jurisdiction permits a defendant to be hauled into court in the forum state to answer
for any of its activities anywhere in the world," *Schwarzenegger v. Fred Martin Co.*,
374 F.3d 797, 801 (9th Cir. 2004), while specific jurisdiction claims arise "out of
defendant's forum related activities." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d
1316 (9th Cir. 1998).

"With respect to a corporation, the place of incorporation and principal place of
business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571
U.S. 117, 137 (2014) (internal quotations omitted). General jurisdiction over
corporations is limited to only those forums where the corporation has continuous and
systemic contacts, such that it is essentially at home. *Goodyear Dunlop Tires
Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

5

The Ninth Circuit uses a three-part test to determine whether a defendant's contacts with the forum state are sufficient to establish specific jurisdiction. *Ballard v. Savag*e, 65 F.3d 1495, 1498 (9th Cir. 1995). Under that test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Boschetto*, 539 F.3d at 1015.

## IV.  ARGUMENT

### A.  This Court lacks personal jurisdiction over HEWA.

As this Court correctly held when it dismissed the First and Second Amended Complaints (ECF 17; 24), the Court lacks personal jurisdiction over HEWA. General jurisdiction is lacking because HEWA is admittedly not "at home" in the forum. *See e.g.,* TAC ¶ 26.[5] Specific jurisdiction is also lacking because Plaintiff does not allege that HEWA specifically targeted California residents with the Meta Pixel or knew that deploying the software would lead to "harm" in the state. *See Massie v. General Motors Corp,* 2021 WL 2142728, *4 (E.D. Cal. May 25, 2021). To sufficiently allege specific jurisdiction, Plaintiff must show that Defendant allegedly has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374

---

[5] Personal jurisdiction is determined by the actions of the Defendant rather than actions of the Plaintiff. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). Any relevant action by HEWA could only have taken place at its headquarters in Kentucky. *See, e.g., Lee v. Netgain Tech*., LLC, No. 21-cv-1144-LL (MSB), 2022 WL 993552, at *4 (S.D. Cal. Apr. 1, 2022) (discussing that courts have found "that decisions by out-of-state companies regarding data breach notifications in California presumably occur at the company's headquarters").

F.3d at 803.

These allegations cannot possibly establish purposeful availment or direction. Plaintiff must also allege that her claims "arise[] out of or relate[]to the defendant's forum-related activities," and none of the "forum-related activities" alleged are even tangentially related to Plaintiff's claims. ECF 17; 24, at 4 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Moreover:

- Not every company who has sold to a California resident is subject to jurisdiction there;

- Plaintiff does not and cannot allege that the MedLion partnership was active at any time within the statute of limitations for her claims (and HEWA has no current or recent relationship with MedLion, *see* Seliga Decl. at ¶ 7);

- The existence of relationship with a California vendor is not sufficient to confer jurisdiction (and Cloudflare does not, in fact, host HEWA's website data, *see* Seliga Decl. at ¶ 6);

- The 2013 nomination of a Californian to serve on a board of directors is grossly insufficient to show purposeful availment or direction to California for years to come, Plaintiff's claims have nothing to do with that nomination, and Defendant has no current affiliation with former board nominee Alan Howe, (*see* Seliga Decl. at ¶ 8);[6] and

- Decade-old Tweets and Facebook posts that simply *mention* California (TAC ¶ 41) are entirely irrelevant to any pertinent analysis.

To say Plaintiff is now grasping at straws is an understatement. This Court was correct when it held that state required registrations and licenses and maintaining in-state agents for legal service do not confer jurisdiction. ECF 17; 24. "[V]oluntary

---

[6] Although this Court has already rejected these bases for jurisdiction, the TAC also relies upon (1) HEWA's license and authorization status as required by the California Business and Professions Code, (TAC ¶ 33); and (2) the fact that HEWA maintains a registered agent for service in California (TAC ¶ 24).

compliance with any such state statute requiring registration and appointment of an agent for service therein amounts to substantial contact for jurisdictional purposes does not comport with due process." *Nutrishare, Inc. v. BioRX, LLC*, 2008 WL 3842946, at *3 (C.D. Cal. 2008) (citing *Leonard v. USA Petroleum Corp.* 829 F. Supp. 882, 888-89 (S.D. Tex. 1993)) ("The designation of an agent simply gives the company more efficient notice than [other methods of] service.... In complying with the [forum state's] registration statute, [defendant] consented to personal jurisdiction in [the forum state] only if the jurisdiction were constitutional … [r]egistration to do business and appointment of an agent for service of process, especially when done to fulfill state law requirements, ... do not constitute a general business presence or consent to suit in [the forum state's] courts on every matter.").

And finally, the cases to which Plaintiff cites, *Herbal Brands Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1093 (9th Cir. 2023) (TAC ¶¶ 27, 36) and *Oakley, Inc. v. Donofrio*, 2013 WL 12126017, at *1 (C.D. Cal. June 14, 2013) (TAC ¶ 38) are inapposite. In those cases, unlike here, the plaintiff alleged that the defendant intentionally infringed upon the intellectual property of a corporation in California, thus directing itself to the forum. As this Court correctly noted, those are important distinguishing facts. ECF 17; 24 at 6.[7] At bottom, Plaintiff has failed to add any compelling or relevant facts to the TAC that should change this Court's ruling that personal jurisdiction is lacking, and her claims should once again be dismissed pursuant to Rule 12(b)(1).[8]

---

[7] The Court should also decline Plaintiff's invitation to delay its decision on HEWA's motion until 30 days following the *en banc* ruling in *Briskin v. Shopify*, which will not be heard until late September. ECF 28. This case has been pending since March of 2023, and Plaintiff now suggests that the Court delay a decision on the sufficiency of her pleadings until late 2024 or early 2025. Moreover, even if the *en banc* panel in vacates the current *Briskin* opinion, it is factually distinguishable because the alleged California connections in that case are stronger than those alleged here.

[8] If the Court does not dismiss Plaintiff's case for failure to state a claim or lack of jurisdiction, it should transfer it to Kentucky. HEWA's employees, customer support call center and distribution center, and data servers are all located there, and it is also

**B.    Plaintiff and Class Members consented to the disclosures at issue.**

Lack of consent is required to state a claim under the Federal Wiretap Act, CIPA and CDAFA. *See* 18 U.S.C. § 2511 (d) ("where one of the parties to the communication has given prior consent"); Cal. Pen. Code § 631 (a) ("unauthorized" interception); Cal. Pen. Code § 638.51 (5) ("if the consent of that user has not been obtained"); Cal. Pen. Code § 502 (c) (CDAFA) ("without permission.").

"[C]onsent may be express or may be implied in fact from the surrounding circumstances indicating that the party to the call knowingly agreed to the surveillance." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS (JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) (quoting *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996)). "[A] party's awareness that he or she is being recorded may establish that the party impliedly consented to the recording." *Moledina v. Marriott Int'l, Inc.*, No. 2:22-cv-03059-SPGJPR, 2022 WL 16630276, at *7 (C.D. Cal. Oct. 17, 2022).

Here, any claim that Defendant's actions were undisclosed or without consent is without merit. Plaintiff and Class Members consented to share information with Facebook when they registered as Facebook users and were informed that Facebook tracks off-Facebook web activities, including those captured on third-party websites via the Meta Pixel. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 (N.D. Cal. 2023) at *7 ("Meta's policies notify Facebook users that Meta collects and uses their personal data, including data about their browsing behavior on some third-party websites, at least in part for targeted advertising.").[9]

---

"a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial portion of the property that is the subject of the action is situated" (28 U.S.C. § 1391(b) (2)) because most if not all relevant activities and omissions alleged occurred there, *e.g.,* all of HEWA's alleged conduct related to its website, Pixel, and Class Members' data. *See* Seliga Decl.

[9] The Northern District of California cites the following Meta policies in support of this statement: Terms of Service at 4 (providing that Meta "collect[s] and use[s] your personal data"); Data Policy at 4–5 (explaining that third parties which are partnered

As Facebook's policies explain, Facebook collects data about Plaintiff's browsing activities across the Internet—known as "off-Facebook activity"—through cookies and tools like the Meta Pixel. This includes information about the websites they visit and buttons they click. Facebook states that it tracks this information "to help personalize and improve content and services, provide a safer experience and to show you useful and relevant ads on and off Meta Products." Ex. A-1 (Meta's Terms of Service).[10]

Facebook's collection of data is not controlled or triggered by HEWA or any other website operator's use of the Pixel. *Id.* (explaining that cookies are "[s]eparate from the Pixel"). And in fact, Facebook gives its users the option to stop Facebook from tracking their off-Facebook activity. *See* Ex. A-2 (Meta's Cookies Policy); Ex. A-3 ("Off-Facebook Activity: Control your information"); Ex. A-4 (Facebook Help Center: "How do I manage my future off-Facebook activity"). Plaintiff and Class Members also have control over whether their browser retains cookies. *Id.*

Importantly, when Facebook attempts to match data collected from off-site websites with Facebook IDs, it can only match data to Facebook users—it cannot match information to non-Facebook users. *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, *2 ("Meta will attempt to match the customer data that it receives to

---

with Meta "provide information about your activities off of our Products"); Cookies Policy at 4 (providing that Meta's "business partners may also choose to share information with Meta").

[10] Plaintiff refers to and cites various Meta policies in her Complaint. *See, e.g.,* TAC ¶¶ 69, 72, 114, 1209. As a result, this Court may consider the policies in ruling on HEWA's Motion. *Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152, 1160 (9th Cir. 2012) (alteration adopted) (holding that the Court "may treat such . . . document[s] as part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

1  Meta users—Meta cannot match non-Meta users."); *see also* TAC ¶ 105 (explaining

2  that only Facebook users have the cookie used by the Pixel).

3      Courts have recognized that users' consent to these Facebook policies is

4  consent to Facebook's collection of information about generalized browsing on

5  public websites—the exact conduct that Plaintiff alleges she engaged in here—even

6  where that information relates to browsing activity on a healthcare provider's

7  website. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017)

8  (finding that plaintiff's consent to Facebook policies constituted consent to the

9  collection of plaintiff's health-related browsing activity because general health

10  information available to the public at large is not protected health information); *see*

11  *also In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, *2 (recognizing a

12  distinction between general health-related browsing activity and activity within a

13  patient portal).[11]

14      Because Plaintiff and Class Members consented to the sharing of the

15  information gathered by the Pixel, the very harm complained of here, there can be no

16  liability under the federal or California wiretapping statutes.

17      **C.    Website tracking software is not wiretapping software.**

18      Even if she and Class Members had not consented, Plaintiff cannot state a

19  wiretapping claim under these facts. In a series of opinions that eventually thwarted

20  an onslaught of website "invasion of privacy" cases in the state, Florida courts

21  definitively ruled that website tracking software is "definitionally excluded" from

22  federal and state wiretapping statutes because they are not wiretapping technologies,

23  but rather "software which tracks a website browser's movements." *Jacome v. Spirit*

24  *Airlines Inc*., No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct.

25  _____

26  [11] The court went on to observe that "[t]he nature of the data collection that plaintiffs
    agreed to is akin to the general internet browsing at issue in *Smith*; the collection of
27  protected health information from a medical provider is a different matter entirely."
    *Id.* Plaintiff does not allege collection and disclosure of data from within any type of
28  "patient portal" here.

11

June 17, 2021); *see also Goldstein v. Costco Wholesale Corp.,* No. 21-CV-80601-RAR, 2021 WL 4134774, at *5 (S.D. Fla. Sept. 9, 2021); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV-CANNON/REINHART, 2021 WL 4093295, at *3 (S.D. Fla. Aug. 23, 2021) (finding in favor of dismissal with prejudice); *Swiggum v. EAN Servs.*, LLC, No. 8:21-CV-493 TPB-CPT, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021). This Court now has the opportunity to do the same in California.

In *Jacome*, the court first held that website software cannot intercept the "contents" of any communication because "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff were . . . precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message." *Jacome*, 2021 WL 3087860 at *12; *see also Goldstein*, 2021 WL 4134774 at *5. The court further held, under very similar facts, that plaintiff had failed to plead that an electronic, mechanical, or other device was used, had failed to plead that any interception was contemporaneous with transmission, had not pled an expectation of privacy, and had consented to any so-called interception. *Jacome,* 2021 WL 3087860 at *10-17; *Goldstein,* 2021 WL 4134774 at *3. As explained below, these same deficiencies are present here, and Plaintiff's claims should be dismissed on similar grounds.

**D.    Plaintiff has not alleged the requisite intent for a federal wiretapping, CIPA, or CDAFA claim.**

§ 2511 applies only where "the use or disclosure [of intercepted information is] accompanied by knowledge or reason to know that the information concerned was obtained through an interception which violated 18 U.S.C. § 2511 (1)."[12] Likewise,

---

[12] U.S. Dept. of Justice, Criminal Resource Manual, 1050. Scope of 18 U.S.C § 2511 Prohibitions, available at https://www.justice.gov/archives/jm/criminal-resource-manual-1050-scope-18-usc-2511-prohibitions. Plaintiff alleges that HEWA violated

under CIPA § 631 Plaintiff must allege that a Defendant "*intentionally* tap[ped]…
any … wire, line, cable, or instrument" to state a claim under the first prong, or that
Defendant "*willfully…* read[], or attempt[ed] to read, or to learn the contents or
meaning of any message, report, or communication while the same is in transit" to
state a claim under the second prong. Cal. Pen. Code § 631 (emphasis added).
CDAFA §§ 503(c)(1), (2) and (7) require "knowing" violation as well. TAC ¶ 286.

Plaintiff has not alleged and cannot allege that HEWA knowingly or willfully
violated any statute when it employed the Pixel software. Under these facts it would
be nearly impossible to coherently do so; HEWA had no reason to know that would-
be plaintiffs would construct a novel legal theory positing that use of a widely
deployed website software for ad optimization could violate wiretapping and hacking
statutes. Because there is no cogitable allegation of intent, all wiretapping and
CDAFA hacking claims must fail.

**E.    Plaintiff has failed to state a claim under the Federal Wiretap Act.**

§ 2511 of the Federal Wiretap Act may be violated when a defendant
"intentionally intercepts, endeavors to intercept, or procures any other person to
intercept or endeavor to intercept, any wire, oral, or electronic communication."
However, as explained below, a violation of the statute requires that *neither* party
consented to the "interception," and that the communication was intercepted via a
wire, line, cable, or instrument "while in transit." None of those prerequisites are pled
or present here.

**1.    Plaintiff fails to allege all parties' lack of consent.**

The Federal Wiretap Act expressly provides that "[i]t shall *not be unlawful*
under this chapter for a person not acting under color of law to intercept a wire, oral,
or electronic communication where such person is a party to the communication or
where *one* of the parties to the communication has given prior consent to such

---

18 U.S.C. § 2511 but does not meet basic notice pleading requirements regarding
which subsections of that law were purportedly violated. *See generally* TAC.

1 interception unless such communication is intercepted for the purpose of committing

2 any criminal or tortious act in violation of the Constitution or laws of the United

3 States or of any State." 18 U.S.C. § 2511 (d) (emphasis added).

4       Logically, the existence of a "communication" implies at least two parties, a

5 sender and a receiver. Here, even if data from a user's web browsing session can be

6 considered a "communication" under the Act, HEWA is necessarily a "party" to that

7 communication. Clearly HEWA "consented" to its *own* use of the Pixel software on

8 its website, and therefore at least *one* of the parties to the "communication" has given

9 prior consent, defeating any possible Federal Wiretap Act claim.[13] HEWA is

10 therefore explicitly exempt from liability under § 2511 (d).

11 **2.      Plaintiff does not allege interception while in transit.**

12       For a website to be "intercepted" under the Federal Wiretap Act, a

13 communication through the site "must be acquired during transmission, not while it is

14 in electronic storage. This conclusion is consistent with the ordinary meaning of

15 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"

16 *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

17       Plaintiff does not plausibly allege any communication was intercepted "while

18 in transit." To do so, she would need to allege that a third party obtained the

19 "communication"—in this case data about a users' browsing session on the site—

20 *before* it received its intended "recipient," HEWA. Plaintiff has not done so, instead

21 alleging that Defendants "stored" these communications and then transmitted them to

22 Facebook. *See, e.g.,* TAC ¶ 143.[14] For this reason alone, the claim should be

---

[13] As discussed above, Plaintiff and the Class Members also impliedly consented to collection of this data when they registered as Facebook users and were informed that Facebook would track their off-Facebook web activities.

[14] The 9th Circuit case quoted but not cited in the TAC at ¶ 149 did not address the interception "while in transit" requirement. Rather, it held that Facebook was not exempt from liability under the "party exemption" of the Federal Wiretap Act in a case filed in 2011 related to the Facebook "like" button. *See In re Facebook Internet Tracking Litig.*, 5:12-md-02314-EJD (N.D. Cal.).

14

dismissed. *Rosenow v. Facebook, Inc*., No. 19-CV-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) (dismissing plaintiffs' Wiretap Act claims for failing to allege sufficient facts about interception).

### F.    Plaintiff cannot state a claim under CIPA § 631.

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). To state a colorable § 631 claim, Plaintiff must plausibly allege that HEWA "intentionally tap[ped], or ma[de] any *unauthorized connection . . .*with any telegraph or telephone wire, line, cable, or instrument"; "*read[], or attempt[ed] to read, or to learn the contents or meaning* of any message, report, or communication *while the same is in transit"; "attempt[ed] to use, in any manner, or for any purpose,* or to communicate in any way, any information so obtained"; or *"aid[ed], agree[d] with, employ[ed], or conspire[d] with"* a third party to allow it to commit any of the acts described in the preceding three clauses. Cal. Pen. Code § 631 (a) (emphasis added).

She has not done so. *First*, the TAC contains no credible allegation of an "interception" by a third party "eavesdropper;" any software on Defendant's cite operates as an extension of Defendant itself, and therefore Plaintiff cannot state a claim under any prong of § 631 because the party exception applies. *Second*, Plaintiff's CIPA claim must fail because the statute does not apply to extraterritorial conduct. *Third,* Plaintiff cannot state a claim under the first prong of § 631 because it does not apply to internet communications. And *fourth,* the TAC contains no credible allegation that HEWA or any third party attempted to "learn the contents or meaning" of any "communication" or that any communications were allegedly intercepted "while in transit," and therefore Plaintiff cannot state a claim under the second prong of the statute either.

### 1.    The Pixel is an "extension" of HEWA's website.

In *Graham v. Noom, Inc*., 533 F. Supp. 823, 829 (N.D. Cal. 2021), the plaintiff alleged that Defendant Noom's use of website tracking software to record visitor data such as keystrokes, mouse clicks, and page scrolling, including PII [personally identifiable information] and PHI [protected health information] violated CIPA. In finding that there were no plausible allegations of wiretapping under California law, the Court found that even if the defendant's third-party software vendor was the alleged interceptor of the "communications," the vendor operates as an "extension" of the Defendant because "[i]t provides a tool—like the tape recorder…—that allows [Defendant] to record and *analyze its own data in aid of [Defendant's] business*." *Id.* at 832 (emphasis added). And while Plaintiff alleges that Facebook monetizes the information it receives through the Facebook Pixel by generating targeted ads; (TAC ¶ 74), *HEWA* is the party that benefits from its own advertising.

*Noom* is directly on point. At best, Plaintiff here has alleged that HEWA has used a tool supplied by a third party to assist it in using its own data (its website visitors' browsing patterns and activity) in aid of its business (to optimize its targeted digital advertising). Courts in this district are in accord, finding that website tracking software acts "more as a recording device and less as a third-party eavesdropper." *Williams v. WhatIf Holdings. LLC et al*, No C 22-03780 WHA (N.D. Cal. Feb. 13, 2023) (denying leave to amend dismissed complaint alleging use of website tracking software violates CIPA). Further, under black letter law, an aiding and abetting theory is viable only if Facebook "violated Section 631(a) in some way." *Byars v. Hot Topic, Inc*., No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023) (quoting *Williams*, 2022 WL 17869275, at *2). Plaintiff has not alleged that Facebook illegally "intercepted" her communications—nor could she, given her consent to the specific conduct at issue when she signed up for her Facebook account. The party exception applies here, and there can be no claim under the first prong of the statute.

### 2. § 631 does not apply to internet communications.

The first prong of § 631 requires that the Plaintiff plausibly allege the communication at issue was transmitted over a "wire, line, cable or instrument." Cal. Pen. Code § 631. When addressing whether there has been an interception over a "wire, line, cable or instrument," the court in *Mastel* held that text-based communications over the internet between two computers do not take place by "telegraph or telephone" via "wire, line, cable, or instrument" for purposes of § 631 (a). *Id.* Here, Plaintiff alleges that she "accessed Defendant's website via a personal computer using hardwired internet access." TAC ¶ 119.[15] She has therefore alleged a text-based communication between two computers and failed to meet that requirement. *Mastel*, 549 F. Supp. 3d at 1137.

### 3. Plaintiff does not allege interception of the "contents" of a "communication" "while in transit."

Plaintiff likewise cannot sate a claim under the second prong of § 631 because, even accepting her allegations as true, she does not plausibly allege that Defendant has "*read[], or attempt[ed] to read, or to learn the contents or meaning* of any message, report, or communication." Cal. Pen. Code § 631 (a). Not all data associated with an electronic communication is content. As the *Jacome* and *Goldstein* courts astutely observed, website tracking software is simply a tool that tracks activity on a website. ["I]t does not convey the substance or meaning of any message." *Jacome,* 2021 WL 3087860 at *12; *see also Goldstein,* 2021 WL 4134774 at *5.

"Content is information a user intended to communicate, such as words spoken in a phone call." *In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1061 (N.D.

---

[15] While use of a smartphone is not alleged here, this is true even where Plaintiff allegedly used a smartphone's web browser to engage with the chat feature on Defendant's website. Although smartphones "contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers…that perform functions well beyond and unrelated to those of a telephone," and Plaintiff's allegations necessarily involve "a feature of the portion of the [smartphone] that functions as a computer, not the phone." *Id.* at 1135-36.

Cal. 2012); *see also, In re Zynga Privacy Litig.*, 750 F. 3d 1098, 1107 (9th Cir. 2014)
("'[C]ontents' refers to the intended message conveyed by the communication, and
does not include record information regarding the characteristics of the message that
is generated in the course of the communication."). As the Ninth Circuit has
cautioned, wiretapping statutes should not be read so broadly as to reach
"[i]nformation available on publicly accessible websites," as it "stands in stark
contrast to the personally identifiable patient records and medical histories protected
by [federal privacy] statutes." *Smith v. Facebook, Inc.*, 745 F. App'x 9, 9 (9th Cir.
208) (affirming "dismissal of [plaintiffs'] complaint alleging that Facebook violated
numerous federal and state laws by collecting and using their browsing data from
various healthcare-related websites" based on plaintiffs' acceptance of terms and
conditions disclosing such tracking). There was no such information conveyed here.
Plaintiff cannot allege any differently and her claim fails on this basis as well.

In addition, like the Federal Wiretap Act, to state a claim under the second
prong of § 631 Plaintiff must plausibly allege an interception of a communication "in
transit or passing," and that an unauthorized interceptor read the communication
"before it reached its intended recipient." Cal. Pen. Code § 631 (a); *Mastel v. Miniclip
SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); *Montantes v. Inventure Foods*,
No. CV-14-1128-MWF (RZx), 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014).

Here there are no alleged facts to support an interception of a communication
in real time before reaching the intended recipient. *See generally* TAC. Cognizable
allegation of a real time interception requires more than a conclusory statement that it
somehow occurred, Plaintiff must give fair notice to the Defendant of when they
believe the communication is intercepted and how. *In re Vizio, Inc. Consumer
Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (finding that "Plaintiffs
have not articulated with sufficient clarity when Vizio supposedly intercepted their
communications" and instead rely on "conclusory allegation that Vizio intercepted
their electronic communications 'during transmission' and 'in real time' which fails

18

to provide fair notice to Defendants of when they believe Vizio intercepts their communication.”); *see also Graham*, 533 F. Supp. 3d at 833 (finding “sharing a record is not eavesdropping” under § 631); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (1975) (dismissing a § 631 claim where the defendant shared a tape recording of his conversation with plaintiff); *Mastel*, 549 F. Supp. at 1137 (dismissing CIPA claim on the basis that acquiring communications from electronic storage does not violate the law). Plaintiff’s CIPA claim should be dismissed on this separate basis as well. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (“Using the word ‘intercept’ repeatedly is simply not enough without the addition of specific facts that make it plausible.”); *Twombly*, 550 U.S. at 570.

### G.    Plaintiff fails to state a claim under CIPA § 638.51.

Plaintiff next alleges a new claim for violation of CIPA § 638.51, which governs use of a “pen register” or “trap and trace” device. TAC ¶¶ 276-281. But the Meta Pixel does not qualify as a pen register or trap and trace device as those terms are defined by the statute. First, “the term ‘pen register’ does not include a device or process used by a provider or customer of a wire or electronic communication service …[for] purposes in the ordinary course of its business.” Cal. Pen. Code § 638.50 (b). As alleged in the TAC, any use of the Meta Pixel by Defendant occurs in the ordinary course of its business. TAC ¶¶ 75-76; 89-91. And second, the statutory definitions of “pen register” and “trap and trace device” both explicitly *exclude* devices that capture the “contents” of a communication. Cal. Pen. Code § 638.50 (b) (pen register) and (c) (trap and trace). Plaintiff repeatedly alleges that the Meta Pixel was used to intercept the contents of a communication in violation of CIPA § 631(a). *See, e.g.,* TAC ¶¶ 5; 142; 238; 254, 255, 258. She has therefore, by definition, failed to allege use of a pen register or trap and trace device. Plaintiff cannot possibly allege both a violation of the second prong of § 631, which *requires* capturing the “contents” of a

19

1  communication, and of § 638.51, which definitionally *precludes* devices that capture

2  the "contents" of a communication. *Id.*

3          But even assuming that the Meta Pixel could qualify as a "pen register or a trap

4  and trace device," Plaintiff cannot state a claim under this section. Section 638.51

5  provides that a "provider of electronic or wire communication service may use a pen

6  register or a trap and trace device…to operate, maintain, and test a wire or electronic

7  communication service" or "if the consent of the user of that service has been

8  obtained."  To the extent that there are any "communications" at issue here, as

9  Plaintiff alleges, then Defendant is the "provider of [an] electronic or wire

10 communication service." Therefore, under the express language of the statute,

11 HEWA *may* use a pen register or trap and trace device to operate and maintain its

12 own website services. Any finding to the contrary would open a proverbial floodgate

13 or claims against the millions of websites capable of identifying a visitor's IP address

14 and other standard and innocuous information used to operate the site securely. Sister

15 courts are in accord. *See, e.g., Casillas v. Transtion Optical Inc.*, No. 23STCV30742

16 (Cal. Super. Ct. Apr. 23, 2024) (sustaining demurrer of trap and trace claim and

17 noting that "Plaintiff's reliance on Greenley v. Kochava, Inc. is unpersuasive

18 [because] [i]n that case the defendant was a data broker that provided software to

19 application developers in return for which it surreptitiously intercepted location data

20 from application users. The alleged conduct and relationship to the plaintiff was very

21 different from the allegations here.").

22         **H.    Plaintiff fails to state a claim under CDAFA.**

23         "[CDAFA] is an anti-hacking statute intended to prohibit the unauthorized use

24 of any computer system for improper or illegitimate purpose." *Custom Packaging*

25 *Supply, Inc. v. Phillips*, Case No. 2:15-CV-04584-ODW-AGR, 2015 WL 8334793, at

26 *4 (C.D. Cal. Dec. 7, 2015). Because it CDAFA is a criminal "anti-hacking" statute,

27 courts interpret "without permission" narrowly, *id.* at *3, and because CDAFA claims

28

20

"sound[] in fraud," they are "subject to Rule 9(b)'s [heightened] pleading standard." *Nowak v. Xapo, Inc*., 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020).

Plaintiff alleges violation of three subsections of the statute: (c)(1), (c)(2) and (c)(7). None are cognizable. Subsection (c)(1) prohibits "access and [unauthorized] use []" of "any data, computer, computer system, or computer network in order to … defraud deceive or extort or wrongfully control or obtain money property or data." Plaintiff alleges she provided data directly to HEWA via its website, including through searches and clicks. *See, e.g.,* TAC ¶¶ 121-127. She cannot coherently allege that HEWA "accessed" and used her "data;" the only data at issue is her own communications to HEWA via HEWA's website. TAC ¶¶ 121; 140. She also cannot allege that any such "access" was unauthorized: as explained in Section B *supra,* the Meta Pixel does not collect data without the user's authorization to do so; *i.e.,* whether the Pixel is permitted to collect data from users is entirely dependent on the user's own browser, cookie, and Meta account settings and permissions.

Subsections (c)(2) and (7) both require accessing a computer or computer network, which Plaintiff never alleges. At best, she alleges that the data she provided directly to HEWA through her activity on its website was used in ways she did not realize. Aside from a conclusory and puzzling allegation that "Defendant knowingly accessed Plaintiff's and Class Members' computers without their permission by including within the SDKs and spyware described herein on its website" (TAC ¶ 287), Plaintiff never alleges—not could she—that HEWA hacked or "accessed" her computer, computer system, or computer network when it included the Pixel technology on its website. *See generally* TAC. "Access means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Pen. Code § 502. Plaintiff cannot allege that HEWA gained entry to her computer or caused any input or output from her computer, network, or memory system. It was Plaintiff who caused the

21

"output" of data at issue here when she interfaced with HEWA's site directly. That HEWA is the website owner directly "communicating" with the Plaintiff, rather than a covert third party or data broker, distinguishes the facts of this case from cases such as *Greenley v. Kochava, Inc*., No. 22-cv-01327-BAS-AHG, 2023 WL 2833466 (S.D. Cal. Jul. 27, 2023).

Importantly, Plaintiff also fails to allege the requisite damages to confer standing to bring a CDAFA claim. "Standing to bring a CDAFA claim requires 'a showing of economic harm or loss.'" *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). Only an individual who has "suffer[ed] damage or loss by reason of a violation" of the statute may bring a civil action "for compensatory damages and injunctive relief or other equitable relief." Cal. Pen. Code § 502(e)(1). CDAFA permits recovery of "[c]ompensatory damages [that] include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." *Id.*

Plaintiff has not alleged any actionable "loss or damage" as required by CDAFA, and certainly not with the requisite specificity under Rule 9(b). She alleges only that "Plaintiff and Class Members suffered damages." TAC ¶ 295. Courts have explicitly held that allege loss of the right to control or protect data or loss of the value of personal data is not the type of loss protected by this statute. *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461 (N.D. Cal. 2021); *Nowak v. Xapo, Inc.,* No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020); *Doe v. Meta Platforms, Inc*. No. 22-cv-03580-WHO *12-13 (N.D. Cal. Sep. 7, 2023) (dismissing CDAFA claim for use of Meta Pixel). Plaintiff has failed to plead the type of damages required under CDAFA, and therefore lacks standing to pursue this claim.

## I.    CIPA and CDAFA do not apply to extraterritorial conduct.

The California Penal Code—which includes CIPA and CDAFA—is not "intended to reach . . . extra-territorial activity." *M Seven Sys. Ltd. v. Leap Wireless*

1  *Int'l Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013); *Hammerling v.*

2  *Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1,

3  2022) (dismissing plaintiff's CIPA claim because plaintiff failed to allege that the

4  data in question was intercepted in California). Plaintiff fails to make the requisite

5  plausible allegation that data was intercepted *in California*. Plaintiff alleges that she

6  transmitted electronic communications to HEWA's computer servers, (TAC ¶ 127),

7  but concedes that HEWA maintains its principal place of business in Kentucky (*id.*

8  ¶ 26). Because Plaintiff fails to allege that the challenged conduct occurred in

9  California, her CIPA claims should be dismissed.[16]

10       Plaintiff also fails to limit her CIPA claims (§§ 631, 638, and 502) to members

11  of a California subclass; rather those claims are alleged on behalf of all class

12  members nationwide. Nothing in CIPA displaces the "strong presumption against the

13  extra-territorial application of California law." *Brackett v. Am. Airlines Grp. Inc.*,

14  No. 21-cv-02681-HSG, 2022 WL 282529, at *2 (N.D. Cal. Jan 31, 2022) (citations

15  omitted). At a minimum, all CIPA and CDAFA claims brought on behalf of non-

16  California residents must be dismissed.

17  **J.    Plaintiff fails to state a claim under CMIA.**

18       Plaintiff next alleges that Defendant has violated Section 56 of the CMIA,

19  which states that "[a]ny provider of health care, health care service plan,

20  pharmaceutical company, or contractor who negligently creates, maintains, preserves,

21  stores, abandons, destroys, or disposes of medical information shall be subject

22  to…remedies and penalties …" Cal. Civ. Code § 56.101; TAC ¶¶ 261-268.

23       The CMIA defines "medical information" as "any individually identifiable

24  information, in electronic or physical form, *in possession of or derived from* a

25

26  [16] As discussed above, Plaintiff's allegations that Defendant maintains servers in
California is unfounded, unsupported, and simply incorrect. In her previous

27  complaint, she alleged that servers were maintained in Kentucky, which is correct.

28  Her sudden pivot to a new allegation without support is not plausible and should not
be permitted to serve as the foundation for a claim.

provider of health care, health care service plan, pharmaceutical company, or contractor regarding a *patient's medical history, mental or physical condition, or treatment*." Cal. Civ. Code § 56.05 (j) (emphasis added). As explained below, Plaintiff has failed to allege that (1) she is a patient, (2) HEWA negligently handled any "medical information" that was in its possession or derived from HEWA, or (3) any "medical information" was actually transmitted to or viewed by Meta.

### 1. Plaintiff fails to allege that she was a "patient."

Under the CMIA, "patient" is defined as anyone who "received health care services from a provider of health care and to whom medical information pertains." Plaintiff does not allege that she has ever received any health care services from HEWA, only that she (1) visited and browsed the HEWA website, (TAC ¶¶ 120-126); and (2) conducted an "experiment" to demonstrate what information might hypothetically be disclosed to Meta or other companies by entering various search terms into the HEWA website, an exercise she admits was merely "[t]esting" conducted in the course of "this investigation" (TAC ¶¶ 146-148).[17] She has therefore failed to satisfy this prong. *Twombly*, 550 U.S. at 570.

### 2. Plaintiff does not allege negligent treatment of medical information as defined by the CMIA.

Plaintiff has also failed to make the requisite allegation that any "medical information" was actually "disclosed" to Defendant or transmitted to Meta. Plaintiff has only alleged that on "information and belief" certain information is communicated to Meta from the HEWA website through use of its Pixel tool, including "the name of the person signing up, date of birth, zip code, button text clicked, IP address, exact URL referred, and other personally identifiable information." TAC ¶ 151. None of that information is "medical information" as

---

[17] Even if Plaintiff had alleged that she was a patient of HEWA, that fact "is not in itself medical information" that can give rise to a claim under CMIA. *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 436 (2014).

defined in the CMIA. Moreover, Plaintiff does not allege that any of the information
purportedly disclosed was ever "in possession of or derived from" HEWA. At best,
Plaintiff alleges that certain information was disclosed *by Plaintiff and Class
Members to Facebook* through their own browser settings and web browsing
activities.

As the Ninth Circuit has made clear, sharing a user's browsing history from a
healthcare provider's public website does not disclose protected health information
because "[t]hese pages contain general health information that is accessible to the
public at large." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd,
745 F. App'x 8 (9th Cir. 2018). Plaintiff has not alleged that she used search terms on
Defendant's website that were disclosed to Meta, but even if she had made or could
make those allegations, those terms would not rise to the level of "personally
identifiable patient records and medical histories protected by these statutes—
information that unequivocally provides a window into an individual's personal
medical history." *Id*. These facts do not a CMIA claim make. *Id; see also Wilson v.
Rater8, LLC*, No. 20-cv-1515-DMS, LL, 2021 WL 4865930, at *1, *5 (S.D. Cal. Oct.
18, 2021) (dismissing the CMIA claim because "[p]laintiff's name, cellular telephone
number, treating physician names, medical treatment appointment information, and
medical treatment discharge dates and times" . . . "is insufficient to allege disclosure
of medical information under the CMIA."); *Twombly*, 550 U.S. at 570.

### 3. Plaintiff fails to allege that anyone at Meta received or viewed medical information.

Although Plaintiff's TAC does summarily allege that Facebook was an
unauthorized third party who viewed data from the Pixel, she does not plausibly
allege that any individual at Meta or any other third party actually viewed any of her
medical information. *See* TAC ¶¶ 102-108; 246. This deficiency is likewise fatal to
her CMIA claim.

25

1    It is well settled that medical information must be "actually viewed" to give

2 rise to a claim under CMIA. *See, e.g., Sutter Health v. Super. Ct.,* 227 Cal. App. 4th

3 1546 (2014); *see also Regents of Univ. Cal. v. Super. Ct*., 220 Cal. App. 4th 549

4 (2013). In those cases, the plaintiff alleged that medical records were stolen, but the

5 court found that there could be no claim because there was no evidence that the

6 records were ever *viewed* by an unauthorized individual. As the Court of Appeals

7 explained, "[n]o breach of confidentiality takes place until an unauthorized person

8 views the medical information. . . . [w]ithout an actual breach of confidentiality, the

9 loss of possession is not actionable under section 56.101." *Sutter Health,* 227 Cal.

10 App. 4th at 1557.

11    Likewise, in a recent case involving the use of Meta Pixel on a healthcare

12 provider's website, the trial court dismissed a CMIA claim on the basis that "the

13 information may be collected, analyzed, and used by a third party for its own benefit,

14 all through the use of computers, without any human actually laying eyes on it.

15 Plaintiffs have not alleged that the information was 'actually read' within the

16 meaning of *Sutter Health*. Plaintiffs conclude that someone must have viewed the

17 data at Facebook in order to compile the datasets for advertisers, the complaint does

18 not specifically allege this." *Barbour v. John Muir Health,* No. C22-01692, 2023 WL

19 2618967, **7-8 (Cal. Super. Ct. Jan. 5, 2023). Plaintiff has not factually alleged that

20 any person at Meta (or elsewhere) has "actually read" Plaintiff's or Class Members'

21 medical information, and the CMIA claim should be dismissed on that basis as well.

22    **K.    Plaintiff cannot state a claim under the CCPA.**

23    Finally, Plaintiff alleges that HEWA's use of the Meta Pixel violates the

24 CCPA, Cal. Civ. Code §§ 1798.100 *et seq*. TAC ¶¶ 269-282. This claim is also

25 unworkable: Plaintiff (1) failed to comply with the 30-day cure period required under

26 the CCPA; (2) has not sufficiently alleged that HEWA is subject to the requirements

27

28

of the CCPA; and (3) has not sufficiently alleged a violation that would give rise to a private right of action under the CCPA. [18]

1.    **HEWA is not a "business" subject to the CCPA.**

The CCPA applies only to certain "businesses," which are defined in the statute as "legal entit[ies] that [are] organized or operated for the profit or financial benefit of [their] shareholders or other owners, that collect[] consumers' personal information,… that do[] business in the State of California, and that satisf[y] one or more of the following thresholds: (A) Has as of January of the calendar year, had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year, as adjusted pursuant to paragraph (5) of subdivision (a) of Section 1798.185. (B) Alone or in combination, annually buys**,** sells, or shares the personal information of *100,000 or more* consumers[19] or households, or devices. (C) Derives 50 percent or more of its annual revenues from selling or sharing consumers' personal information." Cal. Civ. Code § 1798.140 (d) (emphasis added).

---

[18] Cal. Civ. Code § 1798.150 also provides a limited private right of action under the act, and states that "[a]ctions pursuant to this section may be brought by a consumer if, *prior to initiating any action against a business for statutory damages on an individual or class-wide basis*, a consumer *provides a business 30 days' written notice identifying the specific provisions of this title the consumer alleges have been or are being violated*. In the event a cure is possible, if within the 30 days the business actually cures the noticed violation and provides the consumer an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be initiated against the business." *Id*. (emphasis added). Plaintiff has alleged no such notice, and there was none. She is therefore barred from bringing a claim for statutory damages until such notice and cure period is provided.

[19] "Consumer" is defined in the CCPA as "natural person who is a California resident, as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017, however identified, including by any unique identifier." Cal. Civ. Code § 1798.140 (i). Therefore, this definition of "business" under the CCPA applies only to businesses who buy, sell, or share more than 100,000 *California* consumers' personal information annually.

27

1    Plaintiff has not alleged any of these three prerequisites, nor do any of the three
2    apply.[20] Plaintiff's conclusory allegations that HEWA "receives for commercial
3    purposes the personal information of 50,000 consumers" (TAC ¶ 273) and "is a
4    'business' as that term is defined" in the CCPA (TAC ¶ 271) are wholly unsupported
5    in fact and, in the case of the incorrectly stated 50,000-consumer threshold, irrelevant
6    under the law.

7    Separately, Cal. Civ. Code § 1798.81.5 (e) (1) states that the provisions of that
8    section do *not* apply to "(1) A provider of health care, health care service plan, or
9    contractor regulated by the Confidentiality of Medical Information Act (Part 2.6
10   (commencing with Section 56) of Division 1)," and § 1798.81.5 (e) (2) states that
11   they also do not apply to "[a] covered entity governed by the medical privacy and
12   security rules issued by the federal Department of Health and Human Services, Parts
13   160 and 164 of Title 45 of the Code of Federal Regulations, established pursuant to
14   the Health Insurance Portability and Availability Act of 1996 (HIPAA)." Thus, as
15   Plaintiff acknowledges (TAC ¶ 270), to the extent that Plaintiff alleges Defendant is
16   subject to HIPAA, she also acknowledges that HEWA is not subject to CCPA.
17   Likewise, by alleging that Defendant is subject to the CMIA, she acknowledges that
18   it is by definition *not* subject to the CCPA. For all of these reasons, any claim for
19   violation of the CCPA must be dismissed.

20   **2.    Plaintiff has not alleged a cognizable violation.**

21   The majority of the CCPA's regulations are solely enforceable by the
22   California State Attorney General.[21] The private right of action under the CCPA is

---

[20] *See, e.g.,* HEWA Annual Report for the year ended December 31, 2022, at 38, available at https://www.otcmarkets.com/stock/HEWA/overview (indicating gross revenues of $18 million dollars for 2022).

[21] *See* Office of Attorney General Website, available at https://oag.ca.gov/privacy/ccpa#:~:text=For%20all%20other%20violations%20of,not%20represent%20individual%20California%20consumers ("For all other violations of the CCPA, only the Attorney General or the California Privacy Protection Agency may take legal action against non-compliant entities.").

28

limited, and only available to consumers whose personal information was "stolen in a data breach as a result of the business's failure to maintain reasonable security procedures and practices to protect it," *id*., where the data stolen meets the following requirements:

> *"Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, or whose email address in combination with a password or* security question and answer that would permit access to the account is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information."

Cal. Civ. Code § 1798.150 (a) (emphasis added).

Cal. Civ. Code § 1798.81.5 (d) (1) (A) defines "personal information" for these purposes as:

> "An *individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements*, when either the name or the data elements are not encrypted or redacted: (i) Social security number. (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual. (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account. (iv) Medical information.[22] (v) Health insurance information. (vi) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes. (vii) Genetic data." (emphasis added).

---

[22] "Medical information" is defined as "any individually identifiable information, in electronic or physical form, regarding the individual's medical history or medical treatment or diagnosis by a health care professional." Cal. Civ. Code § 1798.81.5 (d) (2). Plaintiff alleges no exfiltration of her medical history, treatment or diagnosis.

At most, Plaintiff alleges that Facebook was able to obtain "the individual's first name or first initial and last name, in combination with dates of birth, addressing, [sic] and other unique identification numbers." TAC ¶ 275. This vague allegation does not meet the definition of "personal information" under § 1798.81.5 (d) (1) (A). Plaintiff can allege neither access or exfiltration of the enumerated data elements, nor an email address and password combination as required to state a private cause of action under CCPA. Moreover, the CCPA provides for a private right of action only to a consumer whose information was "subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security measures." Cal. Civ. Code § 1798.150 (a). Plaintiff does not allege a data security incident resulting from any such failure. The claim must be dismissed.

## V.    **CONCLUSION**

For all of the reasons stated above, Defendant respectfully requests that the Court dismiss the Third Amended Complaint in its entirety with prejudice because further amendment would be futile.

DATED: May 31, 2024          BUCHANAN INGERSOLL & ROONEY LLP


By:  */s/ Jennifer M. Oliver*
                                         Jennifer M. Oliver
                                         Attorney for Defendant
                                         Hwareh.com, Inc.

4866-8969-2608, v. 2