Jennifer M. Oliver (SBN 311196)
jennifer.oliver@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone:   619 239 8700
Fax:            619 702 3898
*Attorney for Defendant HwareH.com, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Shahnaz Zarif, individually and on behalf of others similarly situated,

                Plaintiff,

    vs.

Hwareh.com, Inc.,

                Defendant.

Case No.: 3:23-cv-00565 (BAS) (DEB)

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT HWAREH.COM, INC.'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*No oral argument pursuant to local rule*

Date:   July 22, 2024
Crtrm: 12B
Judge: Hon. C. Bashant

1

## **<u>TABLE OF CONTENTS</u>**

2 I.    INTRODUCTION ........................................................................1

3 II.   ARGUMENT...............................................................................3

4        A.    Plaintiff still cannot establish personal jurisdiction. ...........3

5        B.    Plaintiff's opposition does not negate her consent. .............5

6        C.    Plaintiff has not alleged the requisite intent.......................7

7        D.    Plaintiff cannot state a claim under CIPA § 631 ..................7

8        E.    Plaintiff's pen "trap and trace" claim cannot be rescued.....8

9        F.    Plaintiff fails to state a claim under CDAFA........................8

10       G.    CIPA and CDAFA do not apply to extraterritorial conduct. ...............9

11       H.    Plaintiff's CMIA claim also fails.........................................9

12       I.    Plaintiff cannot state a claim under the CCPA. ..................10

13 III.  CONCLUSION .........................................................................10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:23-cv-0565-BAS-DEB

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3 **Cases**

4
*Backhaut v. Apple, Inc.*,
5    74 F.Supp.3d 1033 (N.D. Cal. 2014)...................................................................6

6 *Briskin v. Shopify*,
7    87 F.4th 404 (9th Cir. 2023) ........................................................................5

8 *CollegeSource, Inc. v. AcademyOne, Inc.*,
9    653 F.3d 1066 (9th Cir. 2011) ...................................................................4

10 *Cottle v. Plaid Inc.*,
    536 F.Supp.3d 461 (N.D. Cal. 2021)...........................................................8
11

12 *Dfinity USA Rsch. LLC v. Bravick*,
    2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) ............................................9
13

14 *Doe v. FullStory, Inc.*,
    2024 WL 188101 (N.D. Cal. Jan. 17, 2024)................................................5
15

16 *Doe v. Meta Platforms, Inc.*
    690 F. Supp.3d 1064 (N.D. Cal. Sep. 7, 2023) ..........................................8

17 *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
18    141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021)................................................4

19 *Greenley v. Kochava*,
20    684 F. Supp. 3d 1024 (S.D. Cal. 2023) ......................................................8

21 *Hammerling v. Google LLC*,
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ...........................................9
22

23 *Kauffman v. Home Depot, Inc.*,
    2024 WL 221434 (S.D. Cal. Jan. 19, 2024) ...............................................5
24

25 *Licea v. Hickory Farms LLC*,
    2024 WL 1698147 (Cal. Sup. Ct. L.A. County Mar. 13, 2024)..................8
26

27 *Lynch v. Express Scripts Holding Co.*,
    2024 WL 3226793 (N.D. Cal. June 28, 2024)..........................................2, 3

28 *M Seven Sys. Ltd. v. Leap Wireless Int'l Inc.*,
    2013 WL 12072526 (S.D. Cal. June 26, 2013) ..........................................9

ii

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp .3d 778 (N.D. Cal. 2022) ................................................................. 5

*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ...................................................... 8

*Ruth Martin v. Outdoor Network LLC*,
    2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ........................................................ 5

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir.
    2018) ........................................................................................................... 5, 6, 10

*Spy Optic, Inc. v. Areatrend, LLC*,
    843 F. App'x 66 (9th Cir. 2021) ........................................................................... 5

*Swarts v. Home Depot, Inc.*,
    2023 WL 5615453 (N.D. Cal. 2023) ..................................................................... 4

*United States of America v. GoodRX Holdings, Inc.*,
    Case No. 23-cv-460 (N.D. Cal. 2023) .................................................................. 6

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ............................................................... 8

**Statutes**

18 U.S.C § 2511 ......................................................................................................... 7

18 U.S.C. § 2511(2)(d) .............................................................................................. 6

Cal. Civ. Code § 56.05(j) ........................................................................................... 9

Cal. Civ. Code § 1798.140(d) .................................................................................. 10

Cal. Penal Code §§ 631(a)… .................................................................................... 6

## I.    __INTRODUCTION__

Plaintiff[1] is now on her fourth attempt to allege a cognizable claim or facts to support personal jurisdiction. She has once again failed to do so.

This Court has twice held that it lacks personal jurisdiction over Kentucky-based HEWA, which has never purposefully availed or directed itself to California. ECF 17, ECF 24. The latest iteration of Plaintiff's complaint comes nowhere close to overcoming this hurdle. Grasping at straws to establish jurisdiction, Plaintiff now points to (a) a 14-year-old Twitter post about HEWA's license to ship its products to California, (b) a 12-year-old Twitter repost of an article about medical marijuana shops in California; (c) another 12-year-old Twitter repost of an article on California's government health care plan; (d) Defendant's products on Amazon; (e) Defendant's registration to collect California sales tax; (f) Facebook posts from 2009-2011; (g) products that Defendant sells containing a California Proposition 65 warning; (h) a 2009 Twitter post stating Defendant is licensed in California; and (i) that Defendant is registered as a foreign corporation with the California Secretary of State. TAC ¶ 41.  These allegations are even more tenuous than the deficient allegations already rejected by this Court.

But even if this Court did have jurisdiction, Plaintiff's latest attempt to state a claim would still fail on numerous grounds, including that a pixel deployed on public pages of a website cannot support a CIPA § 631(a) claim under these facts; the Federal Wiretap Act requires only one parties' consent; CDAFA is an anti-hacking statute that requires that only claimants who have "suffer[ed] damage or loss by reason of a violation" of the statute may bring a civil action; the Meta Pixel is not a "pen register" or "trap and trace" device under Cal. Pen. Code. § 638.51, Plaintiff fails to allege she was a patient, that any medical information was actually transmitted to or viewed by a third party or otherwise negligently disposed of or

---

[1] All abbreviations from HEWA's Motion to Dismiss the TAC (ECF 29) are incorporated herein.

Case No. 3:23-cv-00565-BAS-DEB

1  handled, or that the information at issue was ever in the possession of or derived from
2  HEWA as required by the CMIA; and that Plaintiff alleges neither facts sufficient to
3  show that HEWA is subject to the CCPA nor the requisite "unauthorized access and
4  exfiltration, theft, or disclosure" of the limited enumerated categories of personal
5  information required to state a claim under that statute.

6      The Northern District of California's recent decision dismissing the class
7  action complaint in *Lynch v. Express Scripts Holding Co*., 2024 WL 3226793, at *1
8  (N.D. Cal. June 28, 2024), a near identical complaint filed by the same counsel, also
9  astutely identifies some of the key deficiencies in the pleadings here. For example,
10 there, as here, the plaintiff alleged that he used the defendant's pharmacy website on
11 "multiple" occasions in the past year, (TAC ¶ 71), but then alleged elsewhere that he
12 visited the website "[o]ver the last few years," (TAC ¶ 117), while proposing a class
13 definition that contains no proposed time period, (TAC ¶ 215). And there, as here, the
14 plaintiff "fail[ed] to consistently allege the identity of the company responsible for
15 the interception that is the subject of his complaint."[2] The TAC should be dismissed
16 on these independent bases as well.

17

18 [2] "In some of his allegations, Lynch attributes the alleged wiretapping to Express
19 Scripts. *See, e.g.*, ECF 31 ¶ 88 (alleging that Lynch "reasonably expected that visits
   to Defendant's website would be private, and that Defendant would not be
20 intercepting or tapping their communications with Defendant's website ...."); *see also*
21 *id* . ¶ 89 (alleging Lynch "reasonably believed ... interactions with Defendant's
   website were private and would not be recorded or monitored for a later playback by
22 Defendant, or worse yet, monitored live while Plaintiff and Class Members were on
23 its website."); ¶ 93 (alleging that Express Scripts "surreptitiously collected" Lynch's
   communications "to gain an unlawful understanding of the habits and preferences of
24 users to its websites," solely for Express Scripts' own benefit); ¶ 94 ("Defendant's
25 use of the Facebook Pixel spyware to intercept Plaintiff's and Class Members'
   electronic communications did not facilitate, was not instrumental, and was not
26 incidental to the transmission of Plaintiff's and Class Members' electronic
27 communications with Defendant's website."). Elsewhere, Lynch alleges that
   Facebook is intercepting the communications between him and the Express Scripts
28 website. *See, e.g., id.* ¶ 165 ("Defendant aided and abetted the interception of
   components of Plaintiff's and Class Members' private electronic communications and
2

1  It is clearer than ever that Plaintiff cannot allege jurisdiction or state a

2  cognizable claim; the TAC should be dismissed, and this time with prejudice.

3  **II.   ARGUMENT**

4      **A.    Plaintiff still cannot establish personal jurisdiction.**

5      In its order dismissing Plaintiff's Second Amended Complaint, this Court held

6  that it lacked specific jurisdiction and that the elements of *Calder*[3] were not met. ECF

7  24 at 7-8. As the Court correctly observed, (i) "Plaintiff has not sufficiently alleged

8  'something more' required for express aiming," *id*.; (ii) "Plaintiff's claims do not

9  arise from Defendant's sale of physical products to California residents or

10 Defendant's delivery of physical products to California residents"; and (iii) "[t]here is

11 no causal relationship between Plaintiff's privacy claims and Defendant's license as a

12 non-resident pharmacy, Defendant's partnership with MedLion to deliver

13 medications, or Defendant's nomination of Alan Howe to its board of directors." *Id.*

14     Yet rather than allege facts that *would* support specific jurisdiction—and

15 presumably there are none—Plaintiff continues to rely on the same rejected bases and

16 adds some that are even *more* tenuous. As in the previous iterations of her

17 complaints, Plaintiff has provided no supporting facts or allegations to show that

18

19 _____

19 transmissions by a third-party, Facebook, when Plaintiff and other Class Members
accessed Defendant's website from within the State of California."); *see also id.*

20 ¶ 166 ("Plaintiff and Class Members did not know Defendant was engaging in such

21 interception by a third-party and therefore could not provide consent to have any part
of their private electronic communications intercepted with the aiding and abetting of

22 Defendant."); ¶ 167 ("Plaintiff and Class Members were completely unaware that

23 Defendant had assisted a third-party, Facebook, to intercept and store electronic
communications and other personal data until well after it had already occurred and

24 were therefore unable to consent."). *Lynch,* 2024 WL 3226793 at *1. Each of these

25 inconsistent allegations is recited almost verbatim in the instant complaint as well.
*See, e.g.,* TAC ¶¶ 129, 130, 134, 135, 241.

26

27 [3] "A defendant purposefully directs its activities toward the forum when the
defendant has "(1) committed an intentional act, (2) expressly aimed at the forum

28 state, (3) causing harm that the defendant knows is likely to be suffered in the forum
state."

3

1  HEWA knowingly targeted California residents. Plaintiff summarily alleges that
2  Defendant "targeted users" in California (Opp. at 4) and "purposefully" offered its
3  products to Plaintiff by making them available on its website (Opp. at 6) but provides
4  not a single fact to support those conclusory allegations. Unsupported allegations that
5  Plaintiff or class members may have made a purchase or considered making a
6  purchase do not meet the requirements of *Ashcroft* or *Iqbal*.

7      Plaintiff's allegation that her claims arise out of HEWA's "contacts with
8  California" also falls flat. Opp. at 3 (citing *Swarts v. Home Depot, Inc.*, 2023 WL
9  5615453 (N.D. Cal. 2023) and *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141
10  S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021)). Unlike the plaintiffs in *Ford or Swarts*,
11  Plaintiff does not and cannot allege that HEWA used "every means imaginable—
12  among them, billboards, TV and radio spots, print ads, and direct mail" purposefully
13  placed in and directed to the State of California to urge Californians to buy its
14  products (*see Ford* at 1028), or that she engaged in chats with the Defendant
15  regarding products sold to her at retail stores in California (*see Swarts*).

16      Nor can Plaintiff allege that her case arises from or related to HEWA's
17  shipment of a product into the State of California that subsequently caused injury to a
18  Californian. *Id.* Indeed, Plaintiff's claims have nothing to do with HEWA's products
19  whatsoever, and the purported class is in no way limited to people who purchased
20  them. Rather, Plaintiff here relies solely on the fact that HEWA's website is
21  accessible to Californians, and therefore any claim arising out of Californians' use of
22  that website should confer personal jurisdiction. Not so. The Ninth Circuit has made
23  clear that **"[i]f the maintenance of an interactive website were sufficient to**
24  **support general jurisdiction in every forum in which users interacted with the**
25  **website, the eventual demise of all restrictions on the personal jurisdiction of**
26  **state courts would be the inevitable result."** *CollegeSource, Inc. v. AcademyOne,*
27  *Inc.,* 653 F.3d 1066, 1075–76 (9th Cir. 2011) (emphasis added). "If [a defendant] can
28  be haled into California merely on the basis of its universally accessible website then

4

... every online advertiser worldwide can be haled into California." *Spy Optic, Inc. v. Areatrend, LLC,* 843 F. App'x 66 (9th Cir. 2021).[4] That the Ninth Circuit is rehearing the decision in *Briskin v. Shopify*, 87 F.4th 404 (9th Cir. 2023) *en banc* should have no bearing on this Court's decision to dismiss this case once and for all; there is plenty of other authority to do so.[5] Plaintiff has failed to demonstrate specific jurisdiction and the TAC must be dismissed in its entirety on that basis alone.

**B.    Plaintiff's opposition does not negate her consent.**

Plaintiff fails to distinguish this case from *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) aff'd, 745 F. App'x 8 (9th Cir. 2018), in which the court found that plaintiff's consent to Facebook policies constituted consent to the collection of plaintiff's health-related browsing activity. As the court in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp .3d 778, 791 (N.D. Cal. 2022) recognized, there is an important distinction between public websites that allow users to browse for health related products and searches, and activity within a patient portal. In *Smith*, the plaintiff's searches included, for example, "treatment options for melanoma, information about a specific doctor, [and] search results related to the phrase 'intestine transplant.'" *Id.* at 954-55. Nothing about the URLs, or the content

---

[4] Other California federal courts, and the Ninth Circuit, are in accord. When addressing Plaintiffs' class action claims for violation of CIPA for healthcare defendants' use of the Meta Pixel tool on their website, the court in *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 952 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) found that without "something more," embedding third-party code cannot confer personal jurisdiction over a website operator in the forum where the third party resides.

[5] *See, e.g., Kauffman v. Home Depot, Inc.*, 2024 WL 221434, at *3 (S.D. Cal. Jan. 19, 2024) (finding the court lacked personal jurisdiction over Home Depot for personal data tracking through Home Depot's website and online purchasing system); *Doe v. FullStory, Inc.*, 2024 WL 188101, at *11 (N.D. Cal. Jan. 17, 2024) (holding "something more" was needed in assessing whether a data processing company directed its activity toward California); *Ruth Martin v. Outdoor Network LLC*, 2024 WL 661173, at *4 (C.D. Cal. Jan. 31, 2024) (holding the plaintiff's privacy claims failed to involve purchase or shipment of products) (*see* Order, ECF 24, at 7).

of the pages located at those URLs, relates "to the past, present, or future physical or mental health or condition of an individual." *Id.* The same is true here: as Plaintiff alleges, many of the searches she performed were not related to her own medical conditions. Just as in *Smith*, there is no way to connect the content of Plaintiff's searches on HEWA's public website to the health medical conditions of an individual, and therefore any data collected by the Meta Pixel does not include sensitive protected health information from a medical provider as Plaintiff suggests.[6]

Accordingly, Plaintiff's consent "bars [her] statutory causes of action …. Plaintiff[']s[] claim under the Wiretap Act fails because 'consent of one of the parties to the communication [is] sufficient to preclude liability under the Wiretap Act.'" *Backhaut v. Apple, Inc.*, 74 F.Supp.3d 1033, 1045 (N.D. Cal. 2014); *see also* 18 U.S.C. § 2511(2)(d). Similarly, "Plaintiff[] cannot state a claim under the California Invasion of Privacy Act because that statute imposes liability only for interception 'without the consent of all parties.'" Cal. Pen. Code § 631(a); *Smith*, 262 F. Supp. 3d at 955.[7]

---

[6] Plaintiff also argues that HEWA may not avail itself of the Federal Wiretap Act's one-party consent rule because the communication was intercepted for the purpose of committing a criminal or tortious act. Opp. at 10. This is wrong. Plaintiff cannot allege that she is a patient or that her searches on HEWA's site transmitted any "patient data." Therefore, she does not and cannot allege that HEWA used any "patient data for advertising." HEWA had no intention of committing a criminal or tortious act, nor did it commit one. The crime tort exception does not apply, and Plaintiff therefore must allege all parties' lack of consent.

[7] The FTC's enforcement action against GoodRX, on the other hand, is easily distinguishable. Opp. at 8. In that case, the FTC alleged that GoodRX had (a) shared information from users themselves and from pharmacy benefit managers confirming when a consumer purchases a medication; (b) shared users' prescription medications and personal health conditions; and (c) compiled lists of its users who had purchased particular medications such as those used to treat heart disease and blood pressure, and uploaded their email addresses, phone numbers, and mobile advertising IDs to Facebook so it could identify their profiles. *See United States of America v. GoodRX Holdings, Inc.*, Case No. 23-cv-460 (N.D. Cal. 2023). Plaintiff does not and cannot allege anything similar here.

### C.    Plaintiff has not alleged the requisite intent.

In response to HEWA's argument that she cannot allege intent, Plaintiff cites to general caselaw for the proposition that ignorance of law is not an excuse. Opp. at 12. But Plaintiff ignores the statutory standards specific to her particular claims, for example, that § 2511 applies only where "the use or disclosure [of intercepted information is] accompanied by **knowledge or reason to know that the information concerned was obtained through an interception which violated 18 U.S.C. § 2511 (1)."**[8] Plaintiff has not alleged and cannot allege that HEWA knowingly or willfully violated any statute by deploying software to optimize digital advertising. Without intent, all wiretapping and CDAFA hacking claims must fail.

### D.    Plaintiff cannot state a claim under CIPA § 631.

Plaintiff's CIPA must be dismissed as well. For example, as noted above, and as in the *Express Scripts* case, Plaintiff fails to allege *who* is doing the alleged intercepting. Throughout most of the Complaint, Plaintiff alleges that *HEWA* is the interceptor. But it is well settled that HEWA cannot intercept its own communications. Moreover, nothing in Plaintiff's opposition brief remedies that (i) software on Defendant's site operates as an extension of Defendant itself; (ii) Plaintiff cannot state a claim under the first prong of § 631 because it does not apply to internet communications; and (iii) the TAC contains no credible allegation that HEWA or any third party attempted to "learn the contents or meaning" of any "communication" or that any communications were allegedly intercepted "while in transit," and therefore Plaintiff cannot state a claim under the second prong of the statute either.

---

[8] U.S. Dept. of Justice, Criminal Resource Manual, 1050. Scope of 18 U.S.C § 2511 Prohibitions, available at https://www.justice.gov/archives/jm/criminal-resource-manual-1050-scope-18-usc-2511-prohibitions. Plaintiff alleges that HEWA violated 18 U.S.C. § 2511 but does not meet basic notice pleading requirements regarding which subsections of that law were purportedly violated. *See generally* TAC.

7

### E.    Plaintiff's pen "trap and trace" claim cannot be rescued.

Plaintiff's § 638.51 claim must also fail. As the court in *Licea v. Hickory Farms LLC* recently explained, that statute covers only devices used to record phone numbers—which Plaintiff here does not allege took place—not online devices that record online activity such as IP address. 2024 WL 1698147 at *1 (Cal. Sup. Ct. L.A. County Mar. 13, 2024). As the court went on to note, "such a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider." *Id.* (distinguishing this court's ruling in *Greenley v. Kochava,* 684 F. Supp. 3d 1024 (S.D. Cal. 2023), because in *Licea,* as here, plaintiff did not plead the "unique fingerprinting" relied upon by the Southern District in *Greenley* when analyzing software embedded into a mobile phone, thereby providing unique location and other information normally within the domain of law enforcement officers with a warrant.).

### F.    Plaintiff fails to state a claim under CDAFA.

Next, Plaintiff suggests that the loss of the "sales value" of her personally identifiable information combined with "pain, suffering and emotional harms" should satisfy CDAFAs requirement to state actual damages. Opp. at 23. But the law to which Plaintiff cites does not pertain to CDAFA at all. "Standing to bring a CDAFA claim requires 'a showing of economic harm or loss.'" *Williams v. Facebook, Inc.,* 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). Contrary to Plaintiff's suggestion, (Opp. at 23), courts have explicitly held that the loss of the right to control or protect data or loss of the value of personal data is *not* the type of loss protected by this statute.[9] Plain and simple, Plaintiff has failed to plead the type of damages required under CDAFA, and therefore lacks standing to pursue this claim.

---

[9] *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461 (N.D. Cal. 2021); *Nowak v. Xapo, Inc.,* 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020); *Doe v. Meta Platforms, Inc.,* 690 F. Supp.3d 1064, 1081 (N.D. Cal. Sep. 7, 2023) (dismissing CDAFA claim for use of Meta Pixel).

### G.    CIPA and CDAFA do not apply to extraterritorial conduct.

As Plaintiff concedes, CIPA and the California Penal Code was passed to "protect the people **of California**." TAC ¶ 4 (emphasis added). The California Penal Code is not "intended to reach . . . extra-territorial activity."[10] Courts regularly resolve the question of extraterritorial application of law at the pleading stage. *Id.; see also Dfinity USA Rsch. LLC v. Bravick*, 2023 WL 2717252, at *5 (N.D. Cal. Mar. 29, 2023). HEWA is a Kentucky entity, and Plaintiff fails to plausibly allege that the activity at issue took place in California. The California Penal Code claims should be dismissed on this basis as well.

### H.    Plaintiff's CMIA claim also fails.

In defense of her CMIA claim, Plaintiff argues that the fact that she browsed HEWA's website and searched for medication for herself and others makes her a "patient" who transmitted "medical information"[11] despite never alleging that she sought medical advice or treatment, or even made a purchase. Opp. at 25. But browsing a healthcare provider's website does not make you a patient, and searches performed on a public facing website do not constitute medical information provided by a patient to a medical provider. She has also failed to allege that any "medical information" was actually transmitted to or viewed by Meta Pixel, or that anyone at Meta Pixel—or the 29 other supposed spyware companies to which she repeatedly refers without any detail—ever actually viewed her so-called "medical information."

As explained above, the Ninth Circuit has clarified that sharing a user's browsing history from a healthcare provider's public website does not disclose

---

[10] *M Seven Sys. Ltd. v. Leap Wireless Int'l Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013); *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing CIPA claim because plaintiff failed to allege that the data in question was intercepted in California).

[11] "[A]ny individually identifiable information, in electronic or physical form, *in possession of or derived from* a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a *patient's medical history, mental or physical condition, or treatment*." Cal. Civ. Code § 56.05(j) (emphasis added).

9

1  protected health information. *Smith*, 262 F. Supp. 3d 943. Her claim must be

2  dismissed.

3        I.    **Plaintiff cannot state a claim under the CCPA.**

4        Finally, Plaintiff argues that her CCPA claim should survive despite the fact

5  that she cannot allege HEWA is subject to that law, cannot allege the specific

6  exfiltration enumerated under the law, and failed to satisfy the procedural

7  prerequisites to bring such a claim. As a threshold matter, Plaintiff either

8  misunderstands or ignores HEWA's dispositive argument that it is not a "business"

9  subject to the law. Opp. at 29. HEWA's argument relates not to its alleged status as a

10 healthcare provider but rather the fact that the CCPA only applies to businesses with

11 gross revenues over $25 million or who buy, sell, or share the personal information of

12 **100,000 or more** CA consumers, or derive 50 percent or more of annual revenues

13 from selling or sharing consumers' personal information. Cal. Civ. Code §

14 1798.140(d). Plaintiff alleges none of those. Plaintiff claims she alleges the required

15 revenues, but she states no facts to support that allegation, and in fact, HEWA's

16 publicly available financials show otherwise. Nor does she allege the requisite

17 number of consumers' data; she (conclusorily) alleges that HEWA has data from

18 50,000 consumers whereas the statute requires 100,000. TAC ¶ 273.

19       Plaintiff's opposition also ignores that she has not alleged exfiltration of any

20 category of data that falls within the private right of action under CCPA. As

21 explained in HEWA's moving brief, "the individual's first name or first initial and

22 last name, in combination with dates of birth, addressing, [sic] and other unique

23 identification numbers" (TAC ¶ 275) are plainly not the enumerated categories of

24 definition of "personal information" under § 1798.81.5(d)(1)(A). Plaintiff simply

25 turns a blind eye to this fatal deficiency; this claim too must be dismissed.

26 **III.    <u>CONCLUSION</u>**

27       For all of these reasons, HEWA respectfully requests that all claims in the TAC

28 be dismissed with prejudice.

DATED: July 12, 2024                BUCHANAN INGERSOLL & ROONEY LLP


By:  */s/ Jennifer M. Oliver*
      Jennifer M. Oliver
      Attorney for Defendant
      Hwareh.com, Inc.